| STATE OF NORTH CAROLINA | File No. 15 CVS |
|---|---|
| DAVIDSON County | In The General Court of Justice<br>☐ District ☒ Superior Court Division |

File No. 15CV 00277

| Name of Plaintiff |
|---|
| PAMELA SHOAF |
| Address |
| PO BOX 1739 |
| City, State, Zip |
| MOORESVILLE, NC 28115 |

**CIVIL SUMMONS**

☐ Alias and Pluries Summons

G.S. 1A-1, Rules 3, 4

**VERSUS**

| Name of Defendant(s) | Date Original Summons Issued |
|---|---|
| NAVIENT SLOUTIONS, INC. AND SALLIE MAE, INC. | |
| | Date(s) Subsequent Summon(es) Issued |

**To Each of The Defendant(s) Named Below:**

| Name And Address of Defendant 1 | Name And Address of Defendant 2 |
|---|---|
| NAVIENT SOLUTIONS<br>C/O CORPORATION SERVICE COMPANY<br>REGISTERED AGENT<br>327 HILLSBOROUGH STREET<br>RALEIGH, NC 27603-1725 | SALLIE MAE, INC<br>C/O CORPORATION SERVICE COMPANY<br>REGISTERED AGENT<br>327 HILLSBOROUGH STREET<br>RALEIGH, NC 27603-1725 |

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| Name And Address of Plaintiff's Attorney (If None, Address of Plaintiff) | Date Issued 2-2-15 | Time 2:21 ☐ AM ☒ PM |
|---|---|---|
| Collum & Perry, Attorneys at Law, PA<br>PO Box 1739<br>Mooresville NC 28115 | Signature | |
| | ☒ Deputy CSC ☐ Assistant CSC ☐ Clerk of Superior Court | |

| ☐ ENDORSEMENT | Date of Endorsement | Time ☐ AM ☐ PM |
|---|---|---|
| This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | Signature | |
| | ☐ Deputy CSC ☐ Assistant CSC ☐ Clerk of Superior Court | |

**NOTE TO PARTIES:** Many Counties have **MANDATORY ARBITRATION** programs in which most cases where the amount in controversy is $15,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.

AOC-CV-100, Rev. 10/01

**EXHIBIT A**

© 2001 Administrative Office of the Courts

(Over)

## RETURN OF SERVICE

I certify that this Summons and a copy of the complaint were received and served as follows:

### DEFENDANT 1

| Date Served | Time Served | ☐ AM ☐ PM | Name of Defendant |
|---|---|---|---|
| | | | |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address of Person With Whom Copies Left (if corporation, give title of person copies left with)

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason:

### DEFENDANT 2

| Date Served | Time Served | ☐ AM ☐ PM | Name of Defendant |
|---|---|---|---|
| | | | |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to person named below.

Name And Address of Person With Whom Copies Left (if corporation, give title of person copies left with)

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason.

| Service Fee Paid $ | Signature of Deputy Sheriff Making Return |
|---|---|
| Date Received | Name of Sheriff (Type or Print) |
| Date of Return | County of Sheriff |

AOC-CV-100, Side Two, Rev. 10/01

| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| COUNTY OF DAVIDSON | SUPERIOR COURT DIVISION |
| | 15 CVS _____ |
| PAMELA SHOAF | |
| Plaintiff | |
| v. | COMPLAINT |
| | WITH DEMAND FOR JURY TRIAL |
| NAVIENT SOLUTIONS, INC. and SALLIE MAE, INC. | |
| Defendant | |

**COMES NOW** the Plaintiff, by and through counsel, bringing this action to enforce Plaintiff's right to recover actual, statutory, and punitive damages, costs, attorney's fees and a declaratory judgment from the Defendants for violations of the North Carolina Debt Collector's Act 75-50, *et seq.* (NCDCA) and the Telephone Consumer Protection Act of 1991 47 U.S.C. § 227, *et seq.* In support thereof, the Plaintiff shows as follows:

## JURISDICTION AND VENUE

1. This Court has personal and subject matter jurisdiction over these parties and claims because the acts complained of herein occurred within the state of North Carolina and the County of Davidson.

2. The undersigned counsel is approved to bring this action on behalf of the Plaintiff pursuant to an Order by the United States Bankruptcy Court of the Western District of North Carolina, Statesville Division (the Bankruptcy Court), entered November 14, 2014, and signed by the Honorable Judge Laura Beyer which states that "the law firm of Collum & Perry is approved to represent the Debtors on a contingency basis in North Carolina Superior Court for claims involving violation of North Carolina debt collection laws." *In re Shoaf*, Case No. 12-50545, Ex-Parte Order to Approve Employment of Special Counsel to File Claims in State Superior Court (W.D.N.C. Bankr., Nov. 11, 2014).

3. Venue lies in this District because the Plaintiff was residing in Davidson County during all times relevant to this complaint.

1

## PARTIES

1. Plaintiff is a "consumer" as defined by N.C. Gen. Stat. § 75-50(1), to wit: *"any natural person who has incurred a debt or alleged debt for personal, family, household or agricultural purposes."*

2. The alleged debt in this matter is a "debt" alleged to be owed as defined by the NCDCA at N.C. Gen. Stat. § 75-50(2), to wit: *"any obligation owed or due or alleged to be owed or due from a consumer."*

3. Each Defendant is a debt collector as defined by § 75-50(3), to wit: *"any person engaging, directly or indirectly, in debt collection from a consumer except those persons subject to the provisions of Article 70, Chapter 58 of the General Statutes."*

4. Upon information and belief, the Defendant, Sallie Mae, Inc., ("Sallie Mae") is headquartered in Newark, Delaware.

5. Sallie Mae may be served with process by directing such to its Registered Agent, Corporation Service Company, 327 Hillsborough St., Raleigh, NC 27603-1725.

6. Upon information and belief, Defendant Sallie Mae is attempting to collect a debt on behalf of the United States Department of Education ("DOE")

7. Upon information and belief, the Defendant, Navient Solutions, Inc., ("Navient") is headquartered at 123 Justison Street, Wilmington, Delaware, 19801.

8. Navient may be served with process by directing such to its Registered Agent, Corporation Service Company, 327 Hillsborough St., Raleigh, NC 27603-1725.

9. Upon information and belief, Defendant Navient is attempting to collect a debt on behalf of the DOE.

10. Each Defendant is engaged in the collection of debts from North Carolina consumers

using the mail, internet and telephone, among other means.

11. Each Defendant is engaged in commerce in North Carolina.

## FACTUAL ALLEGATIONS

12. May 16, 2012: The Plaintiff's Chapter 13 proceeding was commenced by the filing of a petition with the Clerk of the Bankruptcy Court.

13. On her petition, the Plaintiff listed the Department of Education for two claims (both account numbers ending in 1005) in the unsecured amounts of $8,726.00 and $8,500.00, respectively.

14. The alleged debts represented prepetition student loans.

15. Pamela Shoaf, the female Debtor in the bankruptcy case referred to *supra*, is alleged to owe a Parent PLUS loan, a type of Federal Student Loan, to the Department of Education. This loan was serviced by Sallie Mae.

16. The Department of Education was listed on the creditors' matrix with the address of "Attn. Corporate Officer, P.O. Box 7063, Utica, NY 13504-7063".

17. May 21, 2012: Sallie Mae, as the servicer for the Department of Education, was served with a copy of Official Form 91 "Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors, & Deadlines".

18. This served as notice to the Department of Education that the Plaintiff was represented by counsel on her debts.

19. May 3, 2013: Plaintiff's attorney mailed a letter to Sallie Mae advising the creditor that Plaintiff was under the protection of 11 U.S.C. § 362 of the U.S. Bankruptcy Code and further advised Sallie Mae that Plaintiff would pursue any and all claims on the Plaintiff's behalf for further violations (see Exhibit A, attached hereto and incorporated herein by reference).

3

20. This letter advised Salle Mae directly that Plaintiff's attorney represented the Plaintiff on all debt issues.

21. June 10, 2013: During a collection call placed by Sallie Mae, the Plaintiff told Sallie Mae agent by phone that she was represented by counsel and that they may not call her again.

22. August 8, 2013: During a collection call placed by Sallie Mae, Plaintiff's husband (who is co-debtor with the Plaintiff in her bankruptcy case) spoke with Sallie Mae about the debt and told the Sallie Mae agent by phone that they were represented by counsel and that they may not call again.

23. October 21, 2013: During a collection call by Sallie Mae, the Plaintiff told the Sallie Mae agent by phone that she was represented by counsel in this matter and that they may not call her again. The Sallie Mae agent replied with words to the effect that for the calls to stop there must be a three-way conversation with Sallie Mae, the Plaintiff and the Plaintiff's attorney.

24. October 24, 2013: Sallie Mae, Inc. filed a Proof of Claim with the Bankruptcy Court in the amount of $18,187.97. Later that day Sallie Mae filed an amended Proof of Claim.

25. Upon information and belief, when a debtor files a Chapter 13 Bankruptcy, the Department of Education's policy is that the loan be removed from repayment status and placed in a "bankruptcy forbearance."

26. During this forbearance, a debtor can make payments but is not required to do so.

27. Despite the notice by letter from the Plaintiff's attorney, Sallie Mae and Navient continued to pursue collection of the alleged debt by sending collection notices and by making telephone calls to the Plaintiff demanding payment.

28. Defendants caused several collection letters to be sent to the Plaintiff after the Plaintiff's Attorney sent the May 3, 2013, letter of representation.

4

29. Defendants have called the Plaintiff's telephone to collect a debt many times after the Plaintiff's Attorney sent the May 3, 2013, letter of representation.

30. Defendants have caused several collection emails to be sent to Plaintiff after the Plaintiff's Attorney sent the May 3, 2013, letter of representation.

31. The Plaintiff has repeatedly informed Sallie Mae not only that she is represented by attorneys and protected by North Carolina State Law, but also that she has filed a Chapter 13 Bankruptcy and is under the protection of the automatic stay.

32. Despite the requests of the Plaintiff to contact her attorney's office, Sallie Mae has refused to cease its debt collection activities directly against the Plaintiff.

33. September 9, 2014: During a telephone conversation between Plaintiff's attorney, Danielle Brudi, and an employee of Sallie Mae who identified himself as Keith, Plaintiff's attorney told Sallie Mae in clear, explicit terms that the Plaintiff was represented by Ms. Brudi and her firm on all of the Plaintiff's debts, both pre-bankruptcy petition and post-bankruptcy petition.

34. Ms. Brudi told Sallie Mae that all calls communications regarding any debt or alleged debt of the Plaintiff must come through Ms. Brudi's firm.

35. Sallie Mae's agent replied that he was not required to communicate with Ms. Brudi and that he would continue to contact the Plaintiff.

36. October 13, 2014: Sallie Mae separated into Sallie Mae and Navient.

37. Upon information and belief, Sallie Mae now solely operates to offer private loan products while Navient services all or most of the student loan debt that Sallie Mae was servicing.

38. Because Navient inherited Sallie Mae's student loan assets, all of Sallie Mae's

5

knowledge and records of the Plaintiff's student loans can be attributed to the Defendant.

39. Navient took over the servicing of the Plaintiff's account and began to contact the Plaintiff by phone and email.

40. October 17, 2014: During a collection call placed by Navient, the Plaintiff explained to Navient's agent that Navient was not allowed to call her based on North Carolina law and that Navient should only contact her attorney.

41. During this call the Navient agent was aggressive in attempting to put the Plaintiff into forbearance despite her refusal.

42. October 24, 2014: During a collection call received from Navient, the Navient agent was aggressive and insisted that the Plaintiff enter forbearance. The Plaintiff explained to the agent that she must communicate with her attorney before she makes a decision about her loan.

43. The agent said words to the effect that he did not understand why the Plaintiff would not enter into forbearance when the Plaintiff could retract the commitment if her attorney advised her to do so.

44. The Plaintiff felt coerced to enter into a forbearance agreement without advice from her attorney.

45. Sallie Mae has listed the Plaintiff's account as being in a deferred status without the permission of the Plaintiff, without permission of the Court and without notice to the Trustee.

46. October 28, 2014: During another collection call from Navient the Navient agent told the Plaintiff words to the effect that they could continue to call because, in the agent's words, the loan was incurred after the Plaintiff filed Chapter 13 bankruptcy.

47. November 7, 2014: During a collection call to the Plaintiff by Navient the Navient agent told the Plaintiff that she would note the account that the Plaintiff was in bankruptcy so Navient

would not call back.

48. Navient has continued to call and by the filing of this case began calling the Plaintiff almost daily.

49. Sallie Mae and Navient have continued to call, email and send letters to the Plaintiff in an attempt to collect the debt despite the Plaintiff and her attorney repeatedly asking them to only contact the Plaintiff's attorney in this matter.

50. Sallie Mae sent emails to Plaintiff concerning the Plaintiff's alleged debt, including but not limited to, the following dates:

> March 13, 2012; April 3, 2012; August 12, 2012; August 17, 2012; August 29, 2012; September 19, 2012; October 3, 2012; January 8, 2013; March 6, 2013; April 4, 2013; April 11, 2013; April 12, 2013; April 18, 2103; May 7, 2013; May 9, 2013; May 23, 2013; June 9, 2013; June 22, 2013; July 7, 2013; July 9, 2013; July 30, 2013; August 9, 2013; September 5, 2013; September 10, 2013; September 12, 2013; September 18, 2013; October 12, 2013; October 9, 2013; October 15, 2013; November 9, 2013; November 10, 2013; November 12. 2103; November 15, 2013; December 8, 2013; December 8, 2013; December 22, 2013; January 7, 2014; January 9, 2014; February 1, 2014; February 9, 2014; March 8, 2014; March 10, 2014; April 5, 2014; April 8, 2014; April 9, 2014; April 16, 2014; May 10, 2014; May 27, 2014; June 8, 2014; June 13, 2014; August 12, 2014; August 13, 2014; September 9, 2014; September 10, 2014; September 25, 2014; October 11, 2014; and November 20, 2014.

51. In none of these emails did Sallie Mae tell the Debtor that Sallie Mae was a Debt collector and that anything the Plaintiff replied would be used in the collection of the debt.

52. Navient sent emails concerning the Plaintiff's alleged debt to the Plaintiff including, but not limited to, the following dates:

> October 23, 2014; November 8, 2014; November 26, 2014; December 2, 2014; December 9, 2014; January 6, 2015; and January 9, 2015.

53. In none of these emails did Navient tell the Debtor that Navient was a Debt collector and that anything the Plaintiff replied would be used in the collection of the debt.

54. Sallie Mae placed calls to the Plaintiff's telephone in an effort to collect the debt,

including but not limited to, the following dates:

> May 31, 2013; June, 2013 (at least once during the first week); June 10, 2013; June 16, 2013; July 1, 2013; August 6, 2013; August 7, 2013; August 8, 2013; August 18, 2013; October 13, 2013; October 14, 2013; October 16, 2013; October 17, 2013; October 28, 2013 (twice); November 6, 2013; November 7, 2013; November 29, 2013; December 15, 2013; March 27, 2014; April 2, 2014; April 4, 2014; June 14, 2014; July 23, 2013; August 9, 2013; October 1, 2014; October 8, 2014; October 10, 2014; and October 14, 2014

55. In none of these calls did Sallie Mae tell the Debtor that Sallie Mae was a Debt collector and that anything the Plaintiff said would be used in the collection of the debt.

56. Navient placed calls to the Plaintiff's telephone in an effort to collect the debt, including but not limited to, the following dates:

> October 17, 2014; October 21, 2014; October 24, 2014; October 27, 2014; October 28, 2014; October 30, 2014; November 5, 2014; December 8, 2014; December 10, 2014 (twice); December 10, 2014; January 6, 2015; January 7, 2015; and January 9, 2015.

57. In none of these calls did Navient tell the Debtor that Sallie Mae was a Debt collector and that anything the Plaintiff replied would be used in the collection of the debt.

58. Sallie Mae mailed collection letters to the Plaintiff, including but not limited to, the following dates:

> March 11, 2014; on or about March 15, 2014 an undated letter which arrived in a green envelope which appeared to be a greeting card; and February 19, 2014.

59. In none of these letters did Sallie Mae tell the Debtor that Sallie Mae was a Debt collector and that anything the Plaintiff replied would be used in the collection of the debt.

60. As of June, 2014, Delta Management Associated, Inc. was hired by Defendants to collect this debt as well.

61. Because Plaintiff was in a Chapter 13 bankruptcy estate, she needed permission from the bankruptcy court to make payments directly to Defendant.

8

62. Because Navient would not communicate with the Debtor's attorney, Debtor's attorney did not know that Navient believed the debt to be a post-bankruptcy petition debt.

63. Had the Plaintiff known that the alleged debt the Defendants sought to collect was believed to be a post-petition debt, the Plaintiff's would have filed a motion or arranged the Plaintiff's plan to pay Navient directly and avoid delinquency, thus allowing the Plaintiff to remain current.

64. Because Navient put the Plaintiff's loan in a delinquent status, it levied a considerable delinquency fee against the Plaintiff's loan. This fee is greater than 10% of the loan value.

65. This damage springs directly from Navient's refusal to communicate with the Plaintiff's attorney in direct contravention of North Carolina law.

66. The conduct of the Defendants is intended to harass and annoy the Plaintiff in violation of North Carolina and Federal law.

67. The conduct of the Defendants has caused the Plaintiff extreme stress, anxiety and physical, mental and emotional suffering.

### FIRST CLAIM FOR RELIEF
Violations of N.C. Gen. Stat. § 75-50, et seq.

68. The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

69. Defendants, by employing the collection tactics described herein, have violated N.C. Gen. Stat. § 75-52 generally, which states that *"No debt collector shall use any conduct, the natural consequence of which is to oppress, harass, or abuse any person in connection with the attempt to collect any debt."*

70. Defendants, in causing the Plaintiff's phone to ring dozens of times, have attempted to collect this alleged debt in violation of N.C. Gen. Stat. § 75-52(3) which proscribes *"Causing a*

9

*telephone to ring or engaging any person in telephone conversation with such frequency as to be unreasonable or to constitute a harassment to the person under the circumstances or at times known to be times other than normal waking hours of the person."*

71. Defendants, by employing the collection tactics described herein, have violated N.C. Gen. Stat. § 75-54 generally, which states that *"No debt collector shall collect or attempt to collect a debt or obtain information concerning a consumer by any fraudulent, deceptive or misleading representation."*

72. Defendants, by failing to alert the Plaintiff with every attempt to collect the alleged debt that the calls, letters and emails were from a debt collector, that those were attempts to collect a debt and that the information provided by the Plaintiff in response to those attempts would be used against her in the collection of her debt, have attempted to collect this alleged debt in violation of N.C. Gen. Stat. § 75-54(2) which proscribes *"Failing to disclose in all communications attempting to collect a debt that the purpose of such communication is to collect a debt."*

73. Defendant, in demanding payment and threatening Plaintiffs with further collection action after being notified that Plaintiff was represented by an attorney have attempted to collect a debt by unfair practices in violation of N.C. Gen. Stat. § 75-55 generally, which states that *"No debt collector shall collect or attempt to collect any debt by use of any unconscionable means. Such means include, but are not limited to, the following: * * * (3) Communicating with a consumer (other than a statement of account used in the normal course of business) whenever the debt collector has been notified by the consumer's attorney that he represents said consumer."*

74. As a result of Defendant's violations of the North Carolina Debt Collection Act, the

10

Plaintiff is entitled to actual damages and to statutory damages in an amount not less than $500.00 but no greater than $4,000.00 per violation pursuant to N.C. Gen. Stat. § 75-56; and reasonable attorney's fees and costs pursuant to N.C. Gen. Stat. § 75-16.

75. The above violations of the North Carolina Prohibited Practices by Collection Agencies Act constitute unfair or deceptive acts or practices proscribed in N.C. Gen. Stat. 75-1.1 and entitle the Plaintiffs to punitive damages in addition to any other damages suffered.

### SECOND CLAIM FOR RELIEF
Violation of 47 U.S.C. § 227, *et seq.*

76. The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

77. The facts averred above are the basis upon which the following claims are made.

78. Defendants used an automatic telephone dialing system, predictive dialing system or a prerecorded or artificial voice to place telephone calls to Plaintiff's cellular telephone.

79. Without admitting to prior consent, Plaintiff expressly revoked any previous consent to Defendants' placement of telephone calls to her cellular telephone by the use of an automatic telephone dialing system or a pre-recorded or artificial voice in telephone calls with Defendants when she asked Defendants to stop calling her during the calls when it was attempting to collect the debt.

80. Without admitting prior consent, Plaintiff's attorney expressly revoked, on behalf of the Plaintiff, any previous consent to Defendants' placement of telephone calls to her cellular telephone by the use of an automatic telephone dialing system or a pre-recorded or artificial voice in telephone calls with Defendants

81. None of Defendants' telephone calls placed to Plaintiff were for "emergency purposes" as required by 47 U.S.C § 227 (b)(1)(A).

11

82. Plaintiff told Defendants on multiple occasions that they should stop calling her.

83. Defendants willfully or knowingly violated the TCPA by continuing to place calls to Plaintiff's cellular telephone after being told not to do so and knowing they had no express consent by the Plaintiff to make the calls.

84. The actions of the Defendants as stated herein were willful and intentional and in total disregard for Plaintiff's rights under law.

85. Defendants intentionally placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or pre-recorded or artificial voice without her prior express consent in violation of 47 U.S.C § 227 (b)(1)(A)(iii).

86. Plaintiff is entitled to damages of $1,500.00 for each of Defendants' calls that are found to be intentional violation of the TCPA, and $500.00 for every other call placed by the Defendants.

## JURY TRIAL

87. Plaintiff asserts her right to a trial by jury for all applicable claims.

**WHEREFORE**, the Plaintiff having set forth her claims for relief against the Defendants, respectfully prays of the Court as follows:

1. For punitive damages against Defendants in an amount the Court deems appropriate;

2. For actual damages in an amount to be determined at trial, $4,000.00 in statutory damages per violation, and punitive damages pursuant to the violations of N.C. Gen. Stat. § 75-50, et. seq. alleged therein;

3. For an award of actual damages in an amount to be determined at trial and $500.00 in statutory damages per violation and $1,500.00 for each willful or knowing violation pursuant to 47 U.S.C §227 (b)(3);

12

4. That the Plaintiff be awarded the costs of litigation and reasonable attorney's fees pursuant to § 75-16.1;

5. That the Court order that all awards pursuant to these claims are awards for personal injury; and

6. That the Plaintiff have such other and further relief as the Court may deem just and proper.

**TODAY** is January 29, 2015.

COLLUM & PERRY

_____  _____
Travis E. Collum NC Bar# 29158           M. Shane Perry NC Bar# 35498
travis@collumperry.com                    shane@collumperry.com

*Attorneys for Plaintiff*
109 W. Statesville Ave. Mooresville, NC 28115
P: 704-663-4187 / F: 704-663-4178

13

## VERIFICATION OF COMPLAINT AND CERTIFICATION

STATE OF NORTH CAROLINA )
)
COUNTY OF IREDELL )

Plaintiff Pamela Shoaf, having first been duly sworn and upon oath, deposes and says as follows:

1. I am the Plaintiff in this civil proceeding.
2. I have read the above-entitled civil Complaint prepared by my attorneys and believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.
3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.
4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.
5. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.
6. Each and every exhibit I have provided to my attorneys which has been attached to this Complaint is a true and correct copy of the original.
7. Except for clearly indicated redactions made by my attorneys where appropriate, we have not altered, changed, modified, or fabricated these exhibits, except that some of the attached exhibits may contain some of my own handwritten notations.

_____
Pamela Shoaf

Subscribed and sworn to before me
this 9th day of January, 2015.

_____
Notary Public – M. Shane Perry

My commission expires September 27, 2017.

-1-





Sallie Mae, Inc.
C/o Corporation Service Co. / Registered Agent
327 Hillsborough Street
Raleigh, NC 27603-1725

COLLUM & PERRY PLLC
109 WEST STATESVILLE AVENUE
MOORESVILLE NC 28115

7014 0150 0002 1334 7943